Russell v. The Alabama Midland Railway Company.

1. One who subscribes to the capital stock of a railway company chartered under the general law for incorporating such companies, must take notice, notwithstanding any representations made to the contrary, that the railroad company has no power to issue or deliver to its stockholders any stock in an existing or future construction company. It follows that oral representations made touching the construction company, its resources or the value of its stock, are not pertinent as a defence to an action by the railroad company against a subscriber to enforce payment of his subscription.

2. In subscribing for the capital stock of a railroad company, it is not matter for settlement or stipulation that the company will retain for a given time the control and management of its railroad and the conduct of its business. This is for regulation by the charter and by the law applicable to like corporations.

3. Acts done in violation of the charter, such as issuing preferred stock or changing a terminus of the railway line or the principal office of the company, will not defeat the collection of subscriptions to the capital stock.

4. That the real ownership of the note sued upon is not in the railroad company but in a construction company, is no answer to an action brought and prosecuted by the former company; nor is it any defence that the railroad company, together with another company, has bought a railroad in Alabama, created an indebtedness therefor and issued bonds on the same; nor is it any defence that there has been an over-issue of stock as an aggregate of stock in two companies, the railroad company and the construction company, there being no allegation that this over-issue applies to the stock of the railroad company separately.

5. The vice-president of a railroad company has no power to make a contract and a deal with other companies by which all the franchises, road-bed, track and other property of the former will pass into the hands of the latter; nor can such contract operate to disable the former to issue stock to subscribers to its capital stock. In an action to compel payment of a subscription to capital stock, it is not competent to inquire whether the plaintiff, by a traffic arrangement or otherwise, has placed its entire business and management in the hands of other companies and has thereby defeated competition, in violation of its charter.

6. That plaintiff (the railroad company), "without the consent of defendant, instructed its canvassers for subscription to its capital stock to take the names and notes of insolvent and worthless parties, which they did to the injury and in fraud of defendant," is too general and vague to present any matter of fact upon which to take issue, and should be disregarded.   *Judgment affirmed.*

April 23, 1894.   Argued at the last term.

Complaint on note.   Before Judge BOWER.   Decatur superior court.   May term, 1893.

The railway company (which was chartered under the general law) sued Russell upon a promissory note for $500, payable to the plaintiff, as the amount of his subscription to its capital stock.   He filed a number of special pleas which were stricken on demurrer.   The nature of them is indicated by the head-notes.   They set up, in brief: (1) Failure of consideration and fraud in the procurement of the note, in that the vice-president and other general officers of the railroad company came to Bainbridge for the express purpose of inducing the people of Decatur county to take stock in the enterprise, called a meeting of the citizens, and made to them statements which were false; among others, that the money subscribed to the railway company could not be lost to the subscriber, because the railway was to be built by the Alabama Terminal and Improvement Company; that the subscriber would receive two thirds of his subscription in the common stock of the railway company and one third in the terminal company; that owing to the advantageous terms on which the terminal

company was to build the railway, it would be utterly impossible to make less than three dollars for every one dollar invested, and therefore if the subscriber lost the entire amount of stock in the railway company he would get it back by receiving three for one in the terminal company, etc. Induced by these and other such statements, defendant was misled into signing the note, when he would not have done so had he known that he was signing for worthless stock and that the statements were untrue. (2) He was induced to sign the note by the further statement of said vice-president, that it was impossible for the railway to pass beyond the control of the railway company until after four years, which statement was untrue, the railway having, within less than that time, gone out of the control of the railway company and into that of the Plant Investment Co. (3) In violation of his promises and representations, acquiesced in by the other general officers present, said vice-president drew around him a favored class of individuals and issued to them preferred stock, giving them ten per cent. interest on the same from the time of payment of their subscriptions, and fraudulently concealed this fact from the other subscribers, including defendant; by reason of which issue said preferred stockholders controlled all the assets of the company, paid nothing to the common subscribers, absorbed the stock of the terminal company, and appropriated the whole of the money paid them by the Plant Investment Co. for the railway, without accounting for a dollar of it. Also, in violation of its charter, plaintiff has changed its terminal point from Bainbridge to Thomasville, without defendant's consent, who would not have signed the note but for the provision of the charter making Bainbridge the terminal point, and but for the representation of said general officers that the terminal point should be there, and so remain, etc. (4) In direct conflict with the representations of

said vice-president and other general officers, within little more than a year after they were made, the entire control of the railway company, its property and franchises was transferred to the Plant Investment Co. by direct arrangement in which said vice-president represented the railway and terminal companies, utterly ignoring the rights of the stockholders and subscribers to the original railway company; and plaintiff has ceased to own the note and has no further interest therein, but turned over its entire assets, subscription notes, etc., to the terminal company, which is a speculative machine headed by said vice-president, and instead of adhering to the charter and carrying out its contract to build the railway, it has, without defendant's consent, agreed to build a railroad to Tuscaloosa beyond Montgomery, Ala., and in violation of the constitution of Georgia, bought a railroad in Alabama known as the Luverne extension, made an indebtedness of $500,000 and issued bonds on the same; and said vice-president and his confrères, after representing that only $2,000,000 of stock would be subscribed to the railway and terminal companies (which would be enough to build the road and leave a large surplus to be divided among the stockholders), issued more than that amount in the two companies, issued to a favored few the leading stocks in the terminal company, and then sold out to the Plant Investment Co. and left their subscribers in the lurch, with a total loss of the amount they subscribed if they are forced to pay it. (5) Said vice-president made a contract and deal by which all the property and franchises of the railway company passed to the Plant Investment Co., except as to the subscription notes, under which trade it is now out of the power of plaintiff to issue to defendant any stock that is not utterly worthless; and in violation of its charter plaintiff has, by transfer of a majority of its stock, or by absolute sale of its property,

v 94-33

or by traffic arrangement, placed its entire business in the hands of the S., F. & W. Railway Co. or the Plant Investment Co., thereby defeating competition, etc.; all without defendant's consent. (6) Fully stated in the last head-note.

W. M. HAMMOND, TOWNSEND & HARRELL, RUSSELL & RUSSELL and CALHOUN, KING & SPALDING, for plaintiff in error.

DONALSON & HAWES and HARRISON & PEEPLES, contra.